Sam Reisman et al., Appellants, v. Central Manufacturing District Bank et al., Defendants. Helen Shanahan, Executrix of Estate of David E. Shanahan, Deceased, Appellee. Howard K. Hurwith, Coappellant.

Gen. No. 39,927.

Opinion filed June 21, 1938.

HAROLD L. PERLMAN, MARVIN J. WELFELD, RUSSELL, MURPHY & PEARSON, McFARLAND, MORGAN & STEARNS and IRVING GOODMAN, all of Chicago, for certain appellants; IRVING GOODMAN, of counsel.

MAX M. GROSSMAN, of Chicago, for certain other appellant.

IRWIN N. WALKER, of Chicago, for appellee; JOHN R. PORTER, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Central Manufacturing District Bank closed its doors and went into liquidation June 24, 1932. There-

after a representative suit was filed in the circuit court to enforce the liability of its stockholders. According to the records of the bank David E. Shanahan was the owner of 240 shares of the capital stock of the bank, upon which he became liable to the creditors of the bank in the sum of $24,000. To relieve himself of part of this liability he filed a verified petition in the circuit court, where the liquidation proceeding was then pending, representing that he was insolvent and unable to pay the full amount of his liability, and that if a decree were rendered against him it would be partially if not wholly uncollectible. Pursuant to this representation, the court on July 28, 1933, entered an order approving a compromise with Shanahan by which his liability to the creditors was satisfied for the sum of $6,300 and the assignment by him of certain deposits in the bank aggregating $7,200. After Shanahan's death October 18, 1936, Helen Shanahan was appointed executrix under his last will and testament and filed an inventory in the probate court disclosing that at the time of his death Shanahan was the owner of various bonds totaling $145,000, common and preferred stocks valued at $151,100, mortgage notes of the value of $125,000, $251,714.87 in cash, and that he owned some twenty-three parcels of real estate in Chicago and vicinity. October 7, 1937, various creditors joining with Howard K. Hurwith, who had been appointed receiver in the liquidation proceeding, filed a petition in the circuit court alleging that at the time of his death, and also at the time of the filing of the petition for the compromise of his stockholder's liability, Shanahan was worth about $1,000,000; that the total claims filed against the estate amounted to approximately $2,100; that when Shanahan executed the petition for settlement of his claim he was not insolvent, but was well able to pay in full his stockholder's liability; that the settlement theretofore made, July 28, 1933, was an imposition and a fraud upon the court, which the court would never

have approved had it been advised of the true facts of the case; that petitioners did not know and had no means of ascertaining the fact that Shanahan was solvent until approximately two months before the filing of the petition, when the inventory filed by the executrix disclosed valuable assets; and asking that the executrix be required to pay Shanahan's full liability as a stockholder of the bank. Helen Shanahan, as executrix, filed a motion to strike the petition, on the ground (1) that it was in the nature of a bill of review and was not brought within the period of time allowed by law for the filing of such proceedings; (2) that the petition failed to set out sufficiently the proceedings sought to be reviewed; (3) that the petition involved the merits of the case and was filed after the expiration of the term in which the decree sought to be vacated was entered; and (4) that the petition sought, in effect, a rehearing upon the basis of newly discovered evidence, but failed to contain any allegations of facts which were not previously known or accessible to petitioners by the exercise of reasonable diligence. The court granted leave to file the petition instanter, sustained the motion to strike the same and entered judgment in favor of Helen Shanahan, executrix. This appeal by the various creditors and the receiver followed.

It is first urged as ground for reversal that since the court had no jurisdiction to approve a compromise of Shanahan's liability, the order approving the settlement was void. This proposition is predicated upon sec. 11 of the Banking Act (Ill. Rev. Stat. 1937, ch. 16½, at p. 193 [Jones Ill. Stats. Ann. 10.11]) which contains the following provision: "Said receiver shall have authority upon the order of the court appointing him to employ such auditors and assistants as may be necessary to establish and recover the liabilities of the stockholders, and may, with the approval of the

court enter into compositions with *insolvent* stockholders, if any.'' (Italics ours.)

It is argued that the motion to strike being in lieu of a demurrer admits that Shanahan was fully solvent at the time the order of settlement was entered on July 28, 1933, and that since the statute hereinbefore set forth authorizes the court to approve compositions only with insolvent stockholders, jurisdiction was lacking for the entry of an order approving the settlement with Shanahan, who was alleged to have had valuable assets, both at the time the settlement was made and also at the time of his death, without proof of his insolvency. Whatever doubt may have formerly existed as to the soundness of this rule of law was dispelled by the decisions in the recent cases of *Burket v. Reliance Bank & Trust Co.,* 367 Ill. 196, and *Hillmer v. Graf,* 294 Ill. App. 612 (Abst.). In the *Burket* case it was held that a trial court had no power to discharge a stockholder of an Illinois bank from any part of the liability imposed by the constitution without proof by the stockholder of his insolvency, and that any order discharging him from liability upon the payment of a sum less than that imposed by law without such proof, is erroneous. The *Hillmer* case was likewise a proceeding to enforce a bank stockholder's liability under the State constitution, and an appeal was taken from an order authorizing the receiver of the Chicago Bank of Commerce to accept from Graf a sum considerably less than the full liability in settlement of the creditors' claim. The record in the *Graf* case showed that after issue had been joined, Graf's offer of settlement was approved by the court without hearing any evidence as to his insolvency, and the court citing and following *Burket v. Reliance Bank & Trust Co., supra,* held that that part of the decree authorizing the receiver to satisfy Graf's liability was erroneous, and the order was accordingly reversed. *Gardner v. Au-*

*burn Park Trust & Savings Bank,* 293 Ill. App. 107, is to the same effect.

The executrix argues that a motion to strike a complaint functioning as a demurrer under the old practice merely admits the allegations well pleaded, and it is urged that although the petition herein set forth alleges that Shanahan owned valuable assets at the time of his death, it is not sufficiently shown that these assets exceeded his liabilities so as to render him solvent, either at the time that the compromise was approved or at his death. We find, however, that the petition after specifically listing the stocks, bonds, notes and real estate owned by Shanahan at the time of his death, contains the following allegation: ". . . in addition to the foregoing assets that the said David E. Shanahan owned considerable other personalty, so that he [Shanahan] was worth at the time of his death and also at the time of the filing of the petition for settlement, about $1,000,000; that thus far the total claims filed against the said estate amount to the sum of Twenty One Hundred ($2,100) Dollars; that the said David E. Shanahan, at the time of executing the petition for settlement in the above entitled cause was not insolvent, but was well able to pay in full his stockholder's liability." These are not conclusions of the pleaders but sufficient allegations of fact, which when undenied constitutes an admission of Shanahan's solvency at the time of the settlement, and bring the petition squarely within the provisions of sec. 11 of the Banking Act.

It is next urged by petitioners that a judgment or decree obtained by fraud will be set aside by a court of equity at any time, and where the motion to strike admits the fraud, it is mandatory upon the court to vacate and set aside the order thus procured. The petition herein alleges facts which constitute fraud, and the authorities in this State and elsewhere have

consistently approved the maxim that fraud vitiates every transaction into which it enters and is applicable to judgments so procured. In *Nelson v. Rockwell*, 14 Ill. 375, it was held that (p. 376) "a fraudulent judgment is void in equity as it regards the party defrauded, and cannot therefore preclude the exercise of equitable jurisdiction."

In *Elting v. First National Bank*, 173 Ill. 368, it was said (p. 391): "When a judgment has been obtained by fraud, it is a mere nullity, and it may be attacked on account of the fraud in a collateral proceeding, and equity has jurisdiction to cancel and set aside such a judgment."

In *Moore v. Sievers*, 336 Ill. 316, the court (at p. 322) reiterated the rule as follows: "A court of equity has always the power to grant relief against judgments and decrees obtained by fraud, and this power will be exercised to prevent the enforcement of a judgment or decree which is against conscience. . . . (*Farwell v. Great Western Telegraph Co.*, 161 Ill. 522; *Elting v. First Nat. Bank*, 173 Ill. 368; *Atlas Nat. Bank v. More*, 152 Ill. 528; *Wing v. Little*, 267 Ill. 20.)"

In *Johnson v. Waters*, 111 U. S. 640, the court gave its approval to this doctrine as follows: "The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. . . . The Court of Chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it." The executrix does not dispute this rule of law,

but seeks to treat the petition herein as a bill of review or a bill in the nature of a bill of review, which she says must be brought within the time allowed for perfecting an appeal or suing out a writ of error, and she also takes the position that the petition is defective because it does not set forth the decree and the proceedings in sufficient detail. However, we do not consider this a bill of review or a bill in the nature of a bill of review, nor do we think it was necessary for the petitioners to have filed such a proceeding. The liquidation suit was a representative action in equity against several hundred stockholders, and was still pending and undisposed of when the briefs herein were filed. If the allegations of the petition are to be taken as true, the act of fraud was committed upon the court in July, 1933, which caused the order, predicated upon such fraud, to become null and void and vested the court with jurisdiction to set aside the order when the fraud practiced upon the court, the creditors and the receiver was called to the court's attention.

The remaining contention of the executrix is that the lapse of four years between the time when the compromise was approved in 1933, and the date of the filing of the petition, prejudiced the adverse party and constitutes laches. It is clear, however, that the fraud charged was not and could not have been discovered prior to Shanahan's death, and it was not until his safety deposit boxes were opened and the inventory filed that the true value of his assets was disclosed to his creditors. The petition was filed within a comparatively short time after these facts came to light, and it is alleged that petitioners ''did not know, and had no means of knowing, that the said David E. Shanahan was not insolvent at the time of the filing of his verified petition for settlement''; that he [Shanahan] represented himself to be hopelessly insolvent and was borrowing money in order to permit him to enjoy the peace

of his declining years without litigation. The doctrine of laches does not apply where parties act diligently and within a reasonable time after the facts upon which the fraud is predicated have been disclosed. In *Messick v. Mohr*, 292 Ill. App. 69, there was a delay of seven years in the enforcement of a right, but the court held that the doctrine of laches did not apply, and said (p. 74): "There is no fixed time that is held to apply in bar of actions in equity. Where it is necessary to prevent fraud or great hardship, courts of equity will grant relief, even after the statute of limitations applicable to actions at law has run, and in other cases, courts of equity may, in order to accomplish a proper result, bar the action in a shorter time than that prescribed by the statute. What is a reasonable time cannot well be defined, but must be left in large measure to the determination of the court in view of the facts presented. (*Cory v. City of Hillsboro*, 205 Ill. App. 49; *Carlock v. Carlock*, 249 Ill. 330.)"

In *Cummer v. Cummer*, 283 Ill. App. 220, the court appropriately defined the rule as follows (p. 239): "However great the lapse of time, laches is not imputable to a party who had no knowledge of a judgment against him and it is only required of him to be diligent in seeking relief after he has notice of it. Laches is not mere lapse of time, but is unreasonable delay under the circumstances, generally involving injustice or injury to the opposite party. (34 C. J. 265, sec. 488.)" The executrix has in no way been prejudiced by the delay, and under the allegations of the petition it appears that the receiver and petitioners acted diligently and within a reasonable time after the facts were disclosed.

For the reasons given, the order sustaining the motion to strike the joint amended petition to vacate the order of July 28, 1933, dismissing the joint amended petition and entering judgment in favor of the execu-

trix, is reversed and the cause is remanded with directions to order the executrix to answer the petition, that a hearing be had thereon and for such other proceedings as are consonant with equity and not inconsistent with the views herein expressed.

*Order reversed and cause remanded with directions.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.