In re TERRY WHEAT, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. TERRY WHEAT et al., Respondents-Appellants.)

First District (4th Division)   Nos. 76-837, 76-1130 cons.

Opinion filed January 4, 1979.

472

James M. DeZelar, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

John and Paula Wheat's judgment for divorce awarded to John *sole* custody of the couple's minor child, Terry Wheat. Subsequently, a petition was filed under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) against John Wheat, alleging that Terry was a neglected minor and requesting that Terry be adjudicated a ward of the court.

At the conclusion of adjudicatory and dispositional hearings, in which both John and Paula Wheat participated, the trial court: (1) found Terry to be a neglected minor; (2) adjudicated her a ward of the court; and (3) awarded Terry into the custody of the Illinois Department of Children and Family Services.

In this consolidated appeal, Paula Wheat contends: (1) she was deprived of the right to be heard at the adjudicatory hearing; (2) once the finding of neglect was entered against John Wheat, she became entitled automatically to Terry's custody, as Terry's natural mother; and (3) the trial court erred when it allegedly treated the finding of neglect entered against John Wheat as binding upon her. Terry Wheat contends that she was deprived of the right to counsel (Ill. Rev. Stat. 1975, ch. 37, par. 701—20) at the adjudicatory and dispositional hearings.

We affirm the trial court.

In July 1975, John and Paula Wheat obtained a judgment for divorce in the State of Illinois. In accordance with the terms of their divorce judgment, John was awarded sole custody of 14-year-old Terry Wheat. Following the divorce proceedings, Paula Wheat resided in Ironton, Missouri. John Wheat, Terry and John's second wife, Paula's sister, resided in Carpentersville, Illinois.

On December 4, 1975, a neglect petition was filed in the circuit court of Cook County requesting that Terry be adjudicated a ward of the court. The petition alleged that Terry's environment with her father was injurious to her welfare (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1)(b)). At the preliminary hearing conducted December 4, the public defender was appointed to represent John Wheat. John Wheat denied the allegations of the neglect petition. By agreement of the parties, the trial court awarded temporary custody of Terry to the Illinois Department of Children and Family Services and appointed a guardian ad litem for her. The neglect petition was then scheduled for a future adjudicatory hearing.

Paula Wheat appeared for the first time at the adjudicatory hearing held February 6, 1976. The public defender was appointed to represent Paula Wheat's interests in the proceedings, and private counsel, Francis Pistorio, was given leave to substitute his appearance, in place of that of the public defender, as John Wheat's attorney. Terry Wheat was not represented by counsel.

At the outset of the adjudicatory hearing, the State requested leave to amend the neglect petition. The original petition alleged that Terry's *environment* with her father was injurious to her welfare. The proposed amendment sought to modify that allegation so it would read that Terry's *behavior*, while in the custody of her father, was injurious to her welfare. When the attorneys representing John and Paula Wheat stated they had

"no objection" to the proposed modification, the amendment was allowed.[1]

John Wheat admitted the allegations set forth in the amended petition. The State then offered the following facts as a basis for his admission:

"Your Honor, first of all, the State would offer as evidence that the father in this case, John M. Wheat and the mother in this case, Paula Wheat were divorced.

\* \* \*

Legal custody was awarded to the father. Since that time, the daughter, the minor Respondent in this case, Terry Wheat has resided with the father.

\* \* \*

[S]he has indicated to the State's Attorneys' Office and to other personnel that she does not wish to live with the father and will not live with the father.

That during the time that she has lived with the father, she has not been attending school; that she has left school and gone to various shopping centers and committed actions of delinquency and committed shoplifting; and that she will not listen to her father, refuses to listen to her father.

And the father at this time feels that he can no longer control her behavior in anyway and that at this time \* \* \* her behavior is becoming such that it is injurious to others and may very well become injurious to herself.

THE COURT: Do you stipulate to those facts?

MR. PISTORIL: We stipulate to those facts. Mr. Wheat represents that he really has absolutely no control over the girl at this point and that is his basis for admission."

After apprising Mr. Wheat of his rights, the trial court accepted John Wheat's admission to the allegations of the amended petition. Thereupon, the attorney representing Paula Wheat stated:

"I feel \* \* \* the record should indicate that the State is not proceeding against the mother [Paula Wheat] in this case \* \* \* [and] she is making no admission to the allegations in the petition.

THE COURT: All right. The record will so indicate."

At the conclusion of the adjudicatory hearing, the trial court found Terry Wheat to be a neglected minor and adjudicated her a ward of the court. The matter was then continued for a dispositional hearing and a social investigation was ordered into Terry's family situation.

---

[1] Statements made during the adjudicatory hearing indicate that six paragraphs of factual allegations are set forth in the amended petition. However, we are unable to ascertain the substance of these allegations as the amended petition is not part of the record on appeal.

The dispositional hearing was conducted March 5, 1976. Terry Wheat was not represented by counsel at this hearing, although a guardian ad litem, who was an attorney, was present on her behalf. At the outset, Paula Wheat's attorney questioned, for the first time, the propriety of the trial court conducting a dispositional hearing with regard to Terry's custody. Paula Wheat's attorney explained his position:

"[B]efore there can be a dispositional hearing there must be an adjudicatory hearing to have a finding of fact whether or not the mother has been neglectful of her child * * *.

* * *

We believe that if the State cannot proceed to a finding of neglect, the mother has the *automatic right* to the custody and control of her child * * *." (Emphasis added.)

The trial court disagreed, stating:

"[Terry Wheat] has been adjudged a ward of this Court. Now what is in her best interests [with regard to custody] will be determined * * * after I have heard all of the evidence * * * which the parties wish to submit * * *."

Following the presentation of all the evidence at the dispositional hearing and after considering arguments of counsel, the trial court found: (1) that both John[2] and Paula Wheat[3] were unfit to accept Terry's custody; and (2) that it was in Terry's best interests to be awarded into the custody of the Illinois Department of Children and Family Services. The trial court admonished the Department that Terry was not to be placed with either parent without further order of court.

The trial court informed the parties that the dispositional order was final and appealable. The trial court also advised them that their right to appellate review was dependent upon the filing of a notice of appeal within 30 days.

Paula Wheat filed her notice of appeal on March 12, 1976. Terry Wheat filed her notice of appeal on July 22, 1976. The two appeals were later consolidated.

The State presented a motion on June 3, 1977, to dismiss Terry Wheat's appeal for lack of jurisdiction, contending that the minor-respondent failed to file a timely notice of appeal. The motion was denied on June 23, 1977.

OPINION

Parents have the primary rights and duties with respect to the care,

___

[2] It should be noted that John Wheat was not requesting custody at the dispositional hearing.

[3] The trial court stated: "[The] evidence clearly establishes that the mother has been unable or unwilling to care, maintain, protect, discipline, promote or supervise the minor respondent or promote her well being."

custody and control of their children.[4] Generally, this relationship continues until the child reaches the legal age of majority. It reaches into every facet of the child's life, from medical care, to education, to religious training, to discipline.[5]

■■ Although parents have an inherent right to custody of their own children, this right is not absolute. Through its role as *parens patriae*, the State, in appropriate circumstances, may properly step in and substitute itself as the guardian of minor children within its jurisdiction.[6] One outgrowth of the State's position as *parens patriae* is the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*), which is directed, in part, at natural parents who are neglectful of children within their custody (Ill. Rev. Stat. 1975, ch. 37, pars. 702—1, 702—4).

I

Initially, Paula Wheat contends that she was deprived of the right to be heard (Ill. Rev. Stat. 1975, ch. 37, par. 701—20) at the adjudicatory hearing. The contention is without merit. The record discloses that when Paula Wheat appeared at the adjudicatory hearing, the public defender immediately was appointed to represent her. Represented by counsel, Paula Wheat then participated fully in the adjudicatory hearing and exercised her opportunity to be heard.

II

■■ ■ Paula Wheat next contends that once the finding of neglect was entered against John Wheat, she became entitled *automatically* to Terry's custody as Terry's natural mother.[7] Paula Wheat argues further that the State could deprive her of Terry's custody only by establishing, in an adjudicatory hearing, that she had herself neglected Terry. We disagree with both propositions.

When a finding of neglect is entered against a parent, who had previously been awarded *sole* custody of the minor child pursuant to a

<hr />

[4] The "primary role of ° ° ° parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder* (1972), 406 U.S. 205, 232, 32 L. Ed. 2d 15, 35, 92 S. Ct. 1526, 1541-42.

[5] For a general discussion of these rights and responsibilities see 59 Am. Jur. 2d *Parent and Child* §§8—24 (1971).

[6] See generally *People ex rel. Ryan v. Sempek* (1958), 12 Ill. 2d 581, 584, 147 N.E.2d 295, 298, and 42 Am. Jur. 2d *Infants* §14 (1969).

[7] Taken generally, this argument implicitly assumes that a parent-custodian under a judgment for divorce automatically forfeits any right to further custody if he or she is found to have neglected the child. This assumption is incorrect. Under the Juvenile Court Act, the trial court, in its discretion, may allow the neglected minor to remain in the custody of the parent-custodian. (Ill. Rev. Stat. 1975, ch. 37, par. 705—2(c).) In such a situation the trial court would normally provide for protective supervision (Ill. Rev. Stat. 1975, ch. 37, par. 705—4) and/or for an order of protection (Ill. Rev. Stat. 1975, ch. 37, par. 705—5). We recognize, however, that in this case, the parent-custodian under the divorce judgment, John Wheat, *did not seek* Terry's custody at the dispositional hearing.

divorce judgment, the noncustodial parent does *not* acquire an automatic and conclusive right to the child's custody. The trial court may adjudicate the minor a ward of the court and proceed to a dispositional hearing. Ill. Rev. Stat. 1975, ch. 37, par. 704—8(2); see *People v. Grieve* (1971), 131 Ill. App. 2d 1078, 267 N.E.2d 19.

The State has the right, in its role as *parens patriae*, to present evidence at this dispositional hearing, in an attempt to demonstrate that the noncustodial parent is "unfit or [is] unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor * * *" (Ill. Rev. Stat. 1975, ch. 37, par. 705—7(1)).

Furthermore, the Juvenile Court Act specifically provides that a parent's right to custody "shall not prevail when the court determines that it is contrary to the [child's] best interests * * *." Ill. Rev. Stat. 1975, ch. 37, par. 701—2(3)(c); see also Ill. Rev. Stat. 1975, ch. 37, par. 705—1.

■■ The circumstances presented by this case may be analogized to the situation where the parent, previously awarded *sole* custody of a minor child under a divorce judgment, dies. The surviving parent does not automatically acquire a *conclusive* right to the child's custody. Custody of the child may be awarded to a third party if the surviving parent is found unfit or if such an award is in the child's best interest. See *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647; Ill. Rev. Stat. 1977, ch. 110½, pars. 11—7, 11—5(b).

III

Finally, Paula Wheat contends the trial court erred when it allegedly treated the finding of neglect entered against John Wheat as binding upon her. However, a reading of the record establishes clearly that the trial court did *not* treat the neglect finding entered against John Wheat as binding upon Paula. The trial court proceeded to a dispositional hearing, not because the neglect finding bound Paula, but, rather, because the State had a right to contest: (1) Paula's fitness to accept Terry's custody; and also (2) whether an award of Terry's custody to Paula would be in the child's best interest.

IV

■ As for the minor-respondent's appeal, we find that we lack jurisdiction to entertain it because it was not timely filed. A reviewing court must decline to proceed in a case over which it lacks jurisdiction. (*In re Kerwood* (1976), 44 Ill. App. 3d 1040, 359 N.E.2d 183; *Norris v. Board of Fire & Police Commissioners* (1975), 30 Ill. App. 3d 224, 332 N.E.2d 553.) The jurisdiction of the appellate court is generally dependent upon

the timely filing of a notice of appeal after the entry of a final judgment. Ill. Rev. Stat. 1975, ch. 110A, pars. 301 and 303(a); *W. B. Cohan Corp. v. City Properties Corp.* (1977), 49 Ill. App. 3d 300, 364 N.E.2d 303.

Supreme Court Rule 660 provides that "(b) * * * [i]n all other proceedings under the Juvenile Court Act, including proceedings involving * * * a neglected minor, * * * appeals from final judgments shall be governed by the rules applicable to civil cases." (Ill. Rev. Stat. 1975, ch. 110A, par. 660(b).) In a civil case, "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from * * *." Ill. Rev. Stat. 1975, ch. 110A, par. 303(a).

A neglect finding was entered against John Wheat at the February 6, 1976, adjudicatory hearing. On March 5, 1976, following the dispositional hearing, a final appealable order was entered which awarded Terry into the custody of the Illinois Department of Children and Family Services. Terry Wheat's notice of appeal, however, was not filed until July 22, 1976, well beyond the 30-day time period provided by Supreme Court Rule 303 (Ill. Rev. Stat. 1975, ch. 110A, par. 303(a)).

The failure of Terry Wheat to file a timely notice of appeal deprives this reviewing court of jurisdiction. We, therefore, vacate our prior order to the contrary, and dismiss the minor-respondent's appeal. See *In re Kerwood* (1976), 44 Ill. App. 3d 1040, 359 N.E.2d 183.

Accordingly, for the reasons stated, we affirm the trial court.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.